**U.S. DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MATTHEW CAMPBELL,

       Plaintiff,

   -against-

THE NEW YORK STATE OFFICE OF
COURT ADMINISTRATION, HON. NORMAN
ST. GEORGE in his Individual Capacity and
HON. VITO CARUSO in his Individual Capacity,

       Defendants.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Civil Action:  1:23-cv-1594 (MAD/DJS)

The Plaintiff, by and through his attorneys, The Tuttle Law Firm, James B. Tuttle, Esq., of Counsel, hereby sets forth the following as and for his complaint against the named Defendants:

**VENUE AND JURISDICTION**

1.  This Court has jurisdiction of the claims herein presented pursuant to 28 U.S. Code §§1331 and 1343 and 42 U.S. Code §1988. This civil action arises under the constitution and laws of the United States. This is a wrongful termination case in which the Plaintiff alleges first amendment violations pursuant to 42 U.S. Code § 1983, first amendment retaliation violations pursuant to 42 U.S. Code §1983, second amendment claims pursuant to 42 U.S. Code §1983, stigma-plus fourteenth amendment violations pursuant to 42 U.S. Code §1983 and Monell liability against the New York State Office of Court Administration pursuant to 42 U.S. Code §1983. The Plaintiff also seeks attorney's fees pursuant to 42 U.S. Code Section 1988.

2.     The unlawful acts and practices alleged in this complaint were all committed within the state of New York and within the northern district of New York. Venue in this district is therefore proper pursuant to 28 U.S. Code Section 1391(b)(2).

3.     The Defendant New York State Office of Court Administration maintains an office for the transaction of business at 187 Wolf Road, Suite 103, Albany, New York 12205 which is within the Northern District and, upon information and belief, all Defendants reside within the State of New York. Venue is therefore proper in the Northern District pursuant to 28 U.S. Code §1381(b)(1) and (c)(2).

## THE PARTIES

4.     The Plaintiff Matthew Campbell is and at all times relevant hereto has been a citizen and resident of the state of New York, residing in Washington County.

5.     The Defendant New York State Office of Court Administration (hereinafter "OCA") is an administrative agency of the state of New York organized and existing under the constitution and laws of the state of New York.

6.     Upon information and belief, the Defendant Vito Caruso is a citizen and resident of the State of New York and previously served as the Deputy Chief Administrative Judge for New York State in charge of all counties outside of New York City, having been appointed to that position in July of 2019 and serving until May or June of 2021. He is sued in his individual capacity and in his administrative capacity as opposed to his judicial capacity.

7.     Upon information and belief, the Defendant Hon. Norman St. George is and at all times relevant hereto has been a citizen and resident of the state of New York. In or about May of 2021, he was appointed to the position of Deputy Chief Administrative Judge (hereinafter "DCAJ") for the State of New York in charge of all counties outside of New York County,

2

replacing DCAJ Vito Caruso.  Defendant St. George is sued herein in his individual capacity and in his administrative capacity as opposed to his judicial capacity.

## FACTUAL ALLEGATIONS

8.     One of the functions of OCA is the provision of security in the Courts of the State of New York by means, among others, of employing qualified personnel as New York State Court Officers.

9.     On September 8, 2015 Officer Campbell was duly appointed as a New York State Court Officer with gun privileges, and he served in that position without incident, disruption or disciplinary proceedings of any kind until May 4, 2021, at which time he enjoyed permanent civil service status in that position in accordance with the constitution and statutes of the State of New York.

10.    Prior to his appointment to the position of Court Officer, Officer Campbell applied for and was granted a pistol permit by the Washington County County Court, and as of May 4, 2021 he lawfully possessed numerous handguns on his permit.

11.    Prior to October 2, 2019, Officer Campbell was assigned to provide security in the Warren County Courthouse and had been so assigned since early 2019, having obtained that assignment by means of the seniority-based bidding process set forth in the collective bargaining agreement governing the terms and conditions of his employment (hereinafter "The CBA").

12.    On October 2, 2019 while Officer Campbell was on duty at the Warren County Courthouse, he observed on the security monitor activities going on in the courtroom by court staff on their lunch break that he considered highly improper, unusual, bizarre, anti-semitic, unpatriotic, inappropriate, controversial and a matter of public concern.

3

13.     Officer Campbell brought the aforesaid matters to the attention of his supervisor, who observed what was going on in the courtroom via the monitor but advised Officer Campbell that he was not going to do anything about it.

14.     Out of concern that the video footage of the conduct in question on the court security system would be either lost or intentionally erased, Officer Campbell took a video of some of the footage on the security monitor on his cell phone and sent it to the other court security officers on duty in the building so they would be aware of what had occurred in the public venue for which they were responsible. A copy of the video is submitted herewith as Exhibit A.

15.     Officer Campbell never made any further publication of the video he took on his cell phone.

16.     From October 2, 2019 through May 4, 2021, Officer Campbell continued to carry out his duties as a security officer at the Warren County Courthouse with gun privileges without incident or controversy.

## JUDGE CARUSO'S ORDER OF MAY 4, 2021

17.     On May 4, 2021, Vito C. Caruso, who was at the time the DCAJ for the courts outside New York City, issued a directive to Joanne Haelen, District Executive for the Fourth District Administrative Office of OCA in Saratoga Springs, New York, stating as follows: "Based upon a review of information provided to me, I hereby approve, effective immediately, suspension of Court Officer Matthew Campbell's firearm privileges, seizure of his firearms both on and off duty and the issuance of a "No Gun" identification." A copy of Judge Caruso's directive of May 4, 2021 is annexed hereto as Exhibit B.

4

18.     On or about May 4, 2021 Officer Campbell was required by the order of Judge Caruso described in paragraph 17 hereof to, and did, appear at the headquarters of the Fourth Judicial District in Saratoga Springs, New York to surrender his service weapon and all of the privately owned handguns carried on his pistol permit and was placed on what is known as "reg pay" status, meaning that he was suspended from his duties as a court officer but paid his regular salary.  He was not offered a hearing or made aware of his right to a hearing at the time of the suspension of his gun status or the seizure of his handguns.

19.     On May 17, 2021, Chief David Joseph, Security Coordinator for the New York State Courts for the Fourth Judicial District, ordered Matthew Campbell to report for duty to Schenectady Family Court on May 24, 2021 at 0900 hours.  A copy of David Joseph's memorandum/order of May 17, 2021 is annexed hereto as Exhibit C.

20.     On May 21, 2021, David Joseph issued a second memorandum/order directing Matthew Campbell to report for duty at the Saratoga Family Court at 0830 hours.  A copy of that memorandum/order is annexed hereto as Exhibit D.  He remained in "no gun" status at that time.

21.     The Schenectady work assignment set forth in the May 17, 2021 memo of David Joseph and the Saratoga County work assignment set forth in the May 21, 2021 order of David Joseph were both significantly less advantageous to the plaintiff than the assignment to Warren County Family Court he had been working since early 2019 and which he had achieved by means of the seniority and bidding provisions in the applicable collective bargaining agreement, as both are significantly further from his home and the dairy farm which he operates in Washington County than his previous assignment.

22.     On May 24, 2021 Officer Campbell reported for duty to the Saratoga Family Court as instructed by Chief David Joseph, and he continued to so report for duty, in "no gun" status, until shortly before May 23, 2022, when he was transferred to Washington County.

23.     Although restored to duty, Officer Campbell remained in a "No Gun" status as a result of Deputy Chief Administrative Judge Vito C. Caruso's letter order of May 4, 2021, which adversely affected his overtime opportunities, bidding rights, qualification for work assignments and other aspects of his employment until he was terminated on May 23, 2022 as a result of the determination here at issue.

### THE DISCIPLINARY PROCEEDINGS

24.     The CBA provides a disciplinary procedure at Article 12 thereof, a copy of which is annexed hereto in its entirety as Exhibit E.

25.     Section 12.1 of the CBA provides that an officer or employee holding a position by permanent appointment in the competitive class of the civil service shall not be removed or otherwise subjected to any disciplinary penalty except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section.

26.     Disciplinary charges dated July 13, 2021 were ultimately served on Officer Campbell.  A copy of those disciplinary charges is annexed hereto as Exhibit F.  Those charges relate entirely to Officer Campbell having allegedly taken a video on his cell phone of events that occurred in the Warren County Supreme Courtroom on October 2 of 2019 and his having allegedly subsequently published that video by means of an email in October of 2020.

27.     The aforesaid disciplinary charges relating to the October 2, 2019 incident were served 3-1/2 months outside of the 18 month statute of limitations set forth in CBA §12.5 (see Exhibit E hereto) and were therefore time-barred.

6

28.     Neither of the charges set forth in the July 13, 2021 notice in any way involved allegations that Officer Campbell had misused or threatened to misuse his firearm or engaged in criminal conduct.

29.     On July 22, 2021, an answer to those charges was filed on behalf of Officer Campbell.  A copy of the answer and discovery demands interposed on Officer Campbell's behalf is annexed hereto as Exhibit G.

30.     The 18 month statute of limitations set forth in §12.5 of the collective bargaining agreement was pled as the first affirmative defense in Officer Campbell's answer.  (Exhibit G hereto, p. 1)

31.     The Respondent refused to comply with the discovery demands interposed on the Petitioner's behalf.

32.     A hearing on the disciplinary charges was held on Thursday, November 18, 2021 before Hearing Officer Matthew S. Lerner via Microsoft TEAMS at which evidence was taken pursuant to direction by law and a transcript made.  Mr. Lerner conducted the hearing from the Annie Shaffer Building in Schenectady, New York where a court reporter was present, recorded the proceedings and ultimately produced a transcript of the proceedings.

33.     No evidence was offered by OCA at that hearing to indicate that Officer Campbell in any way abused or threatened to abuse his firearm or firearm privileges or engaged in criminal conduct, nor was any proof offered by OCA to indicate that Officer Campbell published the video in October of 2020 as alleged.

34.     After the close of the hearing on November 18, 2021 and the delivery of the transcript, post-hearing briefs were submitted on behalf of all parties.

7

35.     On May 4, 2022, Hearing Officer Matthew S. Lerner rendered his report and recommendations, a copy of which is annexed hereto as Exhibit H.  In his report, Hearing Officer Lerner concluded that the "... part of specifications numbers 1 and 2 concerning Officer Campbell's October 2, 2019 conduct is not time-barred because Officer Campbell's conduct was first revealed to the New York Unified Court System on March 15, 2021 – i.e., the date of the email sent to Judge Marks."  Exhibit H, page 8.

36.     Hearing Officer Lerner made no finding with respect to OCA's argument that the statute of limitations was tolled by the Governor's Executive Orders. (Id.)

37.     Hearing Officer Lerner also concluded that on the basis of "... the credible evidence proffered, I find that Petitioner [OCA] has established, by presenting substantial evidence, the portion of specifications numbers 1 and 2 concerning Officer Campbell's recording of the video on October 2, 2019 and texting it to his fellow officers later that day.  (Exhibit H hereto, pp. 8 and 9)

38.     Hearing Officer Lerner also concluded "... that Petitioner [OCA] has not supported by substantial evidence the charge concerning the fall of 2020 group text.  The part of specifications numbers 1 and 2 concerning the fall of 2020 should be dismissed."  (Exhibit H hereto, p. 12)

39.     With respect to the penalty to be imposed, Hearing Officer Lerner recommended that "...some discipline is appropriate under the circumstances.  Accordingly, I recommend that Officer Campbell receive a reprimand, be placed on probation for a period of 6 months, and be directed to remove and delete any copies of the video from the Icloud, any of his portable electronic devices and any of his desktop computers." (Exhibit H hereto, p. 18)

40.    Pursuant to the authority of Section 12.2 (g) of the collective bargaining agreement (Exhibit E hereto), Officer Campbell, through the undersigned, submitted comments on Hearing Officer Lerner's Report and Recommendation to DCAJ St. George dated May 9, 2022. A copy of those comments is annexed hereto as Exhibit I.

41.    On May 23, 2022, DCAJ Norman St. George rendered his determination on Hearing Officer Lerner's recommendation. A copy of DCAJ St. George's determination is annexed hereto as Exhibit J.

42.    DCAJ St. George's determination accepted all of Hearing Officer Lerner's findings and recommendations except his recommendation with regard to penalty.

43.    With regard to the penalty, DCAJ St George's determination provided as follows:

"I do not concur, however, with the recommended punishment. Based upon the serious nature of the misconduct substantiated at the hearing, a greater punishment is warranted. I have determined that termination is appropriate."

44.    Pursuant to DCAJ St. George's determination, Officer Campbell's employment as a Court Officer was terminated effective May 23, 2022.

**THE ARTICLE 78 PROCEEDING**

45.    Officer Campbell challenged his termination by means of an Article 78 proceeding commenced on June 24, 2022 in the Supreme Court for the County of Albany by which he sought reinstatement, back pay and other administrative relief.

46.    By Decision and Order/Judgment dated April 20, 2023, the Albany County Supreme Court, acting through Hon. Kimberly A. O'Connor, justice presiding, granted Officer Campbell the relief requested, dismissed the disciplinary charges against Mr. Campbell and ordered OCA to take any and all appropriate actions to immediately reinstate Mr. Campbell to his position as a New York State Court Officer with full gun status together with the salary or

compensation that he would have been entitled to receive in such position but for his termination and any other relief afforded to him under the CBA.  A copy of Judge O'Connor's Decision and Order is annexed hereto as Exhibit K.

47.    That Decision and Order was duly served with notice of entry on the Respondent New York State Office of Court Administration on the 25th day of April 2023.  Copies of the Notice of Entry and Affidavit of Service are annexed hereto as Exhibit L.

48.    No appeal was filed from Judge O'Connor's Decision and Order of April 20, 2023 within the time period limited by law for the filing of such an appeal.

49.    Notwithstanding Judge O'Connor's Order of April 20, 2023, Officer Campbell was not immediately restored to his position with full gun status as directed.  In order to compel the Office of Court Administration to comply with Judge O'Connor's Order, a second article 78 proceeding had to be commenced, and was commenced on the 6th day of September, 2023.  A copy of that petition is annexed hereto as Exhibit M.

50.    The second article 78 proceeding was discontinued by Stipulation on the 16th day of October, 2023 after the Office of Court Administration finally carried out the directives set forth in Judge O'Connor's original Order of April 20, 2023.

51.    Although Officer Campbell has now been restored to his position as a Court Officer with full gun status and reimbursed for back pay for the period of his wrongful termination, he has not been reimbursed for numerous losses that he incurred as a result of his wrongful termination, including the following:

a.   As a result of his termination, Officer Campbell was required to forfeit 315.53 hours of accrued benefit time for annual leave, sick leave and pre-tour prep time worth approximately $12,000 at his then-current rate of pay.

b.   Lost overtime opportunities from the date of his suspension and loss of gun status on May 4, 2021 to the date that his gun status was restored on the 12th day of September, 2023.  In order to qualify for many overtime opportunities within OCA, gun status is required.   Officer Campbell estimates the amount of lost overtime opportunities resulting from his lack of gun status to be in the amount of $2,775 and will offer proof at trial with respect to the precise amount.

c.   Attorney's fees expended in connection with the disciplinary charges brought against him which have subsequently been ruled to have been invalid in the amount of $35,600.76.

52.    In addition to the economic damages outlined above, Officer Campbell has suffered anxiety, humiliation, loss of reputation in his chosen field of endeavor and mental anguish, including loss of enjoyment of life as a result of the Defendants' conduct.

### AS AND FOR A FIRST CAUSE OF ACTION
### AGAINST THE INDIVIDUAL DEFENDANTS,
### THE PLAINTIFF ALLEGES AS FOLLOWS:

53.    The Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "52" of this complaint as though fully set forth herein.

54. The activities taking place in the courtroom of the Family Court Part 1 for the County of Warren on the 2nd day of October 2019 consisted of a number of court personnel marching around the courtroom in an imitation of the Nazi goose step as set forth on the attached video clip.

55. The activities described in the foregoing paragraph were highly offensive, unpatriotic, utterly inappropriate for the location in which they were taking place and were a matter of public concern, and the Plaintiff's actions in videoing those events on his cell phone and sharing them with other court officers on duty in the Warren County Courthouse that day were protected activity under the first amendment to the U.S. Constitution.

56. Upon observing the activities described in the foregoing paragraphs, Officer Campbell had the absolute right under the first amendment to the United States Constitution to video those events and to bring them to the attention of the general public, even though he chose not to do so and instead chose to share them only with his fellow court officers on duty in the courthouse that day so that they would be aware of what was happening in the venue for which they were responsible.

57. 42 U.S. Code Section 1983 provides that every person who under color of any statute, ordinance, regulation, custom or usage of any state or any territory subjects or causes to be subjected any citizen of the United States to the deprivation of any rights, privileges or immunities secured by the constitution and laws shall be liable to that party in an action at law, suit in equity or other proper proceedings for redress.

58.     The Defendants' conduct in interfering with the Plaintiffs' exercise of his rights to take video on his cell phone of a matter of public concern and to disseminate it to his co-workers who were responsible for what was going on in their assigned workstation was in derogation of the Plaintiff's rights, privileges and immunities secured to him under the constitution and laws of the United States and of the State of New York, specifically the first amendment.

59.     The Defendants are therefore liable to the Plaintiff for his damages, including punitive damages, by operation of the provisions of 42 U.S. Code Section 1983.

60.     The Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury, monetary damages, conscious pain and suffering including loss of enjoyment of life, mental anguish, humiliation and emotional distress as a result of the Defendants' conduct unless and until this Court grants relief.

<u>**AS AND FOR A SECOND CAUSE OF ACTION**</u>
<u>**AGAINST THE INDIVIDUAL DEFENDANTS,**</u>
<u>**THE PLAINTIFFS ALLEGE AS FOLLOWS**</u>

61.     The Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "60" of this complaint as though fully set forth herein.

62.     The Plaintiff's conduct in videotaping the bizarre, unpatriotic and inappropriate conduct going on in the Warren County Courtroom on the 2nd day of October 2019, related to a matter of public concern and was therefore protected activity under the first amendment.

63.     The Defendants' conduct in initiating, prosecuting and participating in disciplinary action against the Plaintiff for such conduct constituted retaliation against the Plaintiff for having exercised his first amendment rights, and the individual Defendants who knowingly and willingly participated in that unlawful retaliation by serving as, respectively, the DCAJ who took away his gun status and confiscated his firearms and the DCAJ who determined

13

that the conduct in question warranted the termination of the Plaintiff's employment violated his rights under the first amendment.

64.     By participating in the retaliation set forth in the preceding paragraph, the Defendants, acting under color of New York State Law, have caused the Plaintiff to be subjected to the deprivation of his rights, privileges and immunities secured to him by the Constitution and Laws of the United States and of the State of New York and are liable to him for his damages, including punitive damages, by operation of the provisions of 42 U.S.C. §1983.

65.     The Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury, monetary damages, conscious pain and suffering including loss of enjoyment of life, mental anguish, humiliation and emotional distress as a result of the Defendants' conduct unless and until this Court grants relief.

**AS AND FOR A THIRD CAUSE OF ACTION**
**AGAINST THE INDIVIDUAL DEFENDANTS**
**THE PLAINTIFFS ALLEGE AS FOLLOWS**

66.     The Plaintiffs repeat and reallege each and every allegation set forth in paragraphs "1" through "65" of this complaint as though fully set forth herein.

67.     As a uniformed court officer in the New York State Office of Court Administration with full civil service status, the Plaintiff had a protected property interest in his continued employment and in the reasonable and lawful application of the Civil Service Law and the reasonable and lawful enforcement of the provisions of the Collective Bargaining Agreement governing his employment with OCA.

68.     In electing to pursue disciplinary charges against the Plaintiff even though it was obvious that the statute of limitations imposed by the applicable collective bargaining agreement had long since expired, OCA and the individual Defendants wrongfully deprived the Plaintiff of his protected property interests as described in the preceding paragraph.

69.     In issuing the Order of May 4, 2021 summarily placing Officer Campbell in no gun status and directing the seizure of his firearms including his privately owned handguns, Defendant Caruso in his capacity as DCAJ and OCA Administrator violated Officer Campbell's rights under the CBA and the Civil Service Law to have discipline imposed on him only after the completion of a hearing on stated charges and the opportunity to present evidence and witnesses in opposition to the charges.

70.     In participating in the disciplinary charges commenced against the Plaintiff by OCA and in failing to honor his duly-pled affirmative defense based on the statute of limitations, Defendant St. George as the DCAJ and OCA administrator who made the determination to fire him participated in the deprivation of the Plaintiff's protected interest under the due process clause.

71.     The disciplinary charges were ultimately dismissed by Order of Judge O'Connor on April 20, 2023 specifically because they were barred by the applicable statute of limitations set forth in the collective bargaining agreement.

72.     The Order of May 4, 2021 ordering the Plaintiff to surrender his weapons and placing him in no gun status and the ultimate termination of his employment were claimed by the Plaintiff to be false and unwarranted at the time and were ultimately proven to be false and unwarranted.

15

73.    The suspension of the Plaintiff's gun privileges and the ultimate termination of his employment constituted a material state-imposed burden or alteration of the Plaintiff's status in his employment with OCA resulting in the loss of reputation and also the economic damages attendant upon the termination of his employment

74.    By participating in the disciplinary proceedings as previously described, the Individual Defendants have caused the Plaintiff to be subjected to the deprivation of his rights, privileges and immunities secured to him under the due process provisions of the fourteenth amendment to the United States Constitution and they are therefore liable to him for his damages, including punitive damages, by operation of the provisions of 42 U.S. Code Section 1983.

75.    As a result of the foregoing, the Plaintiff has suffered, is now suffering and will continue to suffer irreparable injury, monetary damages, conscious pain and suffering including loss of enjoyment of life, mental anguish, humiliation and emotional distress as a result of the Defendants' conduct unless and until this Court grants relief.

### AS AND FOR A FOURTH CAUSE OF ACTION
### AGAINST THE INDIVIDUAL DEFENDANTS
### THE PLAINTIFF ALLEGES AS FOLLOWS:

76.    The Plaintiff repeats and realleges each and every allegations set forth in paragraphs "1" through "75" of this complaint as though fully set forth herein.

77.    Prior to the issuance of DCAJ Caruso's Order of May 4, 2021, Officer Campbell was the holder of a valid pistol permit issued by the Washington County County Court several years prior and possessed a number of handguns on that permit.

16

78.    DCAJ Caruso's Order of May 4, 2021 directed the suspension of Officer Campbell's gun status as a Court Officer, and  it also directed the seizure of all of his firearms, including not only his service weapon but all of the firearms privately owned by him and lawfully possessed pursuant to the license referred to in the preceding paragraph.

79.    Pursuant to DCAJ Caruso's Order of May 4, 2021, Officer Campbell's privately owned and permitted weapons were seized by OCA on May 4, 2021 and not returned to him until September 12, 2023.

80.    DCAJ Caruso's Order of May 4, 2021 directed the suspension of Officer Campbell's gun status as a Court Officer and the seizure of his service weapon and all privately owned handguns notwithstanding the fact that no aspect of the disciplinary charges ultimately brought against Officer Campbell bore any relation to the use or misuse of a firearm, the threatened use of a firearm or were in any way related to the subject of firearms.

81.    Under the second amendment, Officer Campbell had a right to possess firearms subject to reasonable state licensing requirements, which he had complied with.

82.    As a result of DCAJ Caruso's Order of May 4, 2021, the Plaintiff was deprived of his rights under the second amendment to possess his personally owned and licensed firearms from that date to and including the 12th day of September, 2023 when his firearms were finally returned to him after he was forced to defend a disciplinary proceeding and bring two separate article 78 proceedings to compel the return of his firearms.

83.    As a result of the foregoing, the Plaintiff maintains this action under 42 U.S. Code Section 1983 to recover all of his general, special, incidental and consequential damages resulting from the violation of his rights under the second amendment as aforesaid.

## AS AND FOR A FIFTH CAUSE OF ACTION
### AGAINST DEFENDANT OCA,
### THE PLAINTIFF ALLEGES AS FOLLOWS:

84.     The Plaintiff repeats and reallege each and every allegation set forth in paragraphs "1" through "83" of this complaint as though fully set forth herein.

85.     All of the actions previously alleged on the part of individual Defendants Caruso and St. George were taken under color of state law and in the course of performance of their duties as high-ranking employees and policymakers of OCA.

86.     The actions of Defendants Caruso and St. George as previously alleged herein all brought about and/or constituted the deprivation of the Plaintiff's constitutional rights under the first amendment, the fourteenth amendment, the second amendment and the New York State Civil Service Law.

87.     As a result of the constitutional and statutory violations of the Plaintiff's rights by the Defendants previously set forth, the Plaintiff has suffered damages including the loss of his employment, damage to his reputation, mental anguish, conscious pain and suffering including the loss of enjoyment of life and economic damages as previously alleged herein.

88.     All of the aforesaid deprivations and damages suffered by the Plaintiff were caused by the official policy of the Defendant OCA in that all of the direct actors, i.e., the individual Defendants Caruso and St. George, were very high-ranking officials of and policy makers of the Office of Court Administration, and their conduct therefore represented the policy of the Office of Court Administration.

89.     As a result of the foregoing, the Plaintiff hereby asserts this cause of action against the New York State Office of Court Administration under Monell v. Department of

Social Services, 436 U.S. 658 (1978) to recover all of his general, special, incidental and consequential damages caused by the actions of its policy makers.

### AS AND FOR A SIXTH CAUSE OF ACTION AGAINST ALL DEFENDANT, THE PLAINTIFF ALLEGES AS FOLLOWS:

90.     The Plaintiff repeats and realleges each and every allegation set forth in paragraphs "1" through "89" of this complaint as though fully set forth herein.

91.     The Plaintiff hereby demands the award of attorney's fees against the Defendants pursuant to the authority of 42 U.S. Code Section 1988.

### DEMAND FOR JURY TRIAL

92.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiff hereby demands a Trial by Jury of all causes of action.

WHEREFORE, the Plaintiff respectfully requests that this Court enter a judgment:

a.     Declaring that the actions of the individual Defendants herein violated the Plaintiff's rights under the first amendment, constituted retaliation against the Plaintiff for having exercised his rights under the first amendment, constituted a stigma-plus violation of his rights to due process under the fourteenth amendment, violated his rights under the second amendment and declaring that the Defendant OCA is liable for the Plaintiff's damages under Monell principles;

b.     Awarding the Plaintiff compensatory damages for all of his general, special, incidental and consequential damages in the approximate amount of $100,000, subject to proof at trial;

c.     Awarding the Plaintiff punitive damages against the Defendants for their flagrant violations of his rights; and

    d.    Awarding the Plaintiff reasonable attorney's fees pursuant to the authority of 42 U.S. Code Section 1988, together with such other and further relief as to the Court shall seem just and proper.

Dated: December 15, 2023

                            Respectfully submitted,

                            THE TUTTLE LAW FIRM

                            James B. Tuttle, Esq.
                            Attorneys for the Plaintiff
                            Federal Bar Roll Number: 102748
                            939 Route 146, Suite 820
                            Clifton Park, New York 12065
                            (518) 783-1001
                            Jbtesq@nycap.rr.com