**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

MATTHEW CAMPBELL,

                           Plaintiff,                    1:23-cv-1594
                                                         (ECC/DJS)
v.

THE NEW YORK STATE OFFICE OF COURT
ADMINISTRATION, HON. NORMAN ST.
GEORGE in his Individual Capacity, and HON.
VITO CARUSO in his Individual Capacity,

                           Defendants.

_____

James B. Tuttle, Esq., *for Plaintiff*
James D. Taylor, Esq., *for Defendants*

**Hon. Elizabeth C. Coombe, United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

On December 18, 2023, Plaintiff Matthew Campbell initiated this action pursuant to 42

U.S.C. §§ 1983 and 1988 against Defendants The New York State Office of Court Administration

(OCA), the Honorable Norman St. George, and the Honorable Vito Caruso, arising from Plaintiff's

termination from his employment as a New York State Court Officer.  Complaint (Compl.), Dkt.

No. 1.[1]  Presently before the Court is Defendants St. George and Caruso's motion to dismiss

pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  Dkt. No. 23.  The

motion is fully briefed, Dkt. Nos. 23-1, 24, 25, and a hearing was held on March 20, 2025.  For

the following reasons, the motion to dismiss is granted in part and denied in part.

---

[1] On April 8, 2024, Plaintiff filed a notice of voluntary dismissal as to Defendant OCA.  Dkt. No.
20.

## I.     FACTS[2]

Between September 2015 and October 2019, Plaintiff was employed as a Court Officer with the OCA.  Compl. ¶¶ 8-11.  Plaintiff was afforded gun privileges in conjunction with his duties as a Court Officer, and also possessed numerous personal handguns on a pistol permit issued by the Washington County Court.  *Id.* ¶¶ 9-10.  On October 2, 2019, Plaintiff was on duty at his assigned station in the Warren County Courthouse, when "he observed on the security monitor activities going on in the courtroom by court staff on their lunch break that [Plaintiff] considered highly improper, unusual, bizarre, anti-semitic, unpatriotic, inappropriate, controversial and a matter of public concern."  *Id.* ¶ 12.  Plaintiff "brought the aforesaid matters to the attention of his supervisor, who observed what was going on in the courtroom via the monitor but advised [Plaintiff] that he was not going to do anything about it."  *Id.* ¶ 13.  "Out of concern that the video footage of the conduct in question on the court security system would be either lost or intentionally erased, [Plaintiff] took a video of some of the footage on the security monitor on his cell phone and sent it to the other court security officers on duty[.]"  *Id.* ¶ 14.  Plaintiff sent the video footage to the other officers "so they would be aware of what had occurred in the public venue for which they were responsible."  *Id.*  Plaintiff "never made any further publication of the video he took on his cell phone," and "continued to carry out his duties . . . without incident or controversy[.]"  *Id.* ¶ 15.

---

[2] These facts are drawn from the Complaint.  The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of New York*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true any legal conclusions, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In May 2021, Defendant Caruso was the New York State Deputy Chief Administrative Judge (DCAJ) for courts outside of New York City. Compl. ¶ 6. On May 4, 2021, Defendant Caruso issued the following directive:

> Based upon a review of information provided to me, I hereby approve, effective immediately, suspension of Court Officer Matthew Campbell's firearm privileges, seizure of his firearms both on and off duty and the issuance of a 'No Gun' identification.

*Id.* ¶ 17, Ex. B. To comply with Defendant Caruso's directive Plaintiff was required to, and did, "surrender his service weapon and all of the privately owned handguns carried on his pistol permit[.]" *Id.* ¶ 18. Plaintiff was also placed on "reg pay" status.[3] *Id.* Plaintiff "was not offered a hearing or made aware of his right to a hearing at the time of the suspension of his gun status or the seizure of his handguns." *Id.*

On May 24, 2021, Plaintiff reported for duty to Saratoga Family Court in "'no gun' status" pursuant to the directive of Chief David Joseph, Security Coordinator for the New York State Courts for the Fourth Judicial District. Compl. ¶¶ 19-22. Plaintiff's limitation to working in "no gun" status "adversely affected his overtime opportunities, bidding rights, qualifications for work assignments and other aspects of his employment[.]" *Id.* ¶ 23.

Plaintiff was eventually served with disciplinary charges dated July 13, 2021, charging Plaintiff with "having allegedly taken a video on his cell phone of events that occurred in the Warren County Supreme Courtroom on [October 2, 2019] and his having allegedly subsequently published that video by means of an email in [October 2020.]" Compl. ¶ 26. The disciplinary charges were served three-and-a-half months outside of the 18-month statute of limitations set forth in the collective bargaining agreement (CBA) governing the terms and conditions of

---

[3] On "reg pay" status, Plaintiff was suspended from his duties as a court officer but paid his regular salary. Compl. ¶ 18.

Plaintiff's employment. *Id.* ¶¶ 11, 24, 27, Ex. E. The disciplinary charges did not involve allegations that Plaintiff had "misused or threatened to misuse his firearm or engaged in criminal conduct." *Id.* ¶ 28. An answer to the disciplinary charges was filed on behalf of Plaintiff on July 22, 2021. *Id.* ¶ 29, Ex. G. The statute of limitations was pleaded as the first affirmative defense. *Id.* ¶ 30.[4]

A hearing was held on November 18, 2021 in connection with the disciplinary charges. Compl. ¶¶ 32-34. No evidence or proof was offered to indicate that Plaintiff (1) "in any way abused or threatened to abuse his firearm or firearm privileges or engaged in criminal conduct," or (2) "published the video in October of 2020 as alleged." *Id.* ¶ 33. On May 4, 2020, the hearing officer issued a report and recommendation, in which he concluded that Plaintiff's October 2, 2019 conduct was not time-barred "because [Plaintiff's] conduct was first revealed to the New York Unified Court System on March 15, 2021 – i.e. the date of the email sent to Judge Marks." *Id.* ¶ 35, Ex. H. The hearing officer further concluded that OCA had established the portion of the charges concerning Plaintiff's recording of the video on October 2, 2019 and texting it to his fellow officers later that day, but had not supported the charge concerning the 2020 group text. *Id.* ¶¶ 37-38, Ex. H. The hearing officer concluded that "some discipline is appropriate under the circumstances[,]" and accordingly recommended that Plaintiff "receive a reprimand, be placed on probation for a period of [six] months, and be directed to remove and delete any copies of the video" from his devices. *Id.* ¶ 39, Ex. H.

---

[4] The Complaint alleges that "Respondent refused to comply with the discovery demands interposed on the Petitioner's behalf[]" in conjunction with the disciplinary proceedings. Compl. ¶ 31. The Complaint subsequently refers to OCA as the "Petitioner" in the context of the disciplinary hearing, however it is not entirely clear which party refused to comply with discovery demands.

Plaintiff submitted comments on the report and recommendation to Defendant DCAJ St. George[5] on May 9, 2022, as permitted under the CBA.  Compl. ¶ 40, Ex. I.  On May 23, 2022, Defendant St. George rendered a determination, accepting the hearing officer's findings and recommendations except with regard to penalty.  *Id.* ¶¶ 41-42, Ex. J.  With regard to penalty, Defendant St. George determined that a "greater punishment" is warranted, and that "termination" is appropriate.  *Id.* ¶ 43, Ex. J.  Pursuant to Defendant St. George's determination, Plaintiff's employment was terminated.  *Id.* ¶ 44.

Plaintiff challenged his termination by means of an Article 78 proceeding commenced on June 24, 2022, in which he sought reinstatement, back pay and other administrative relief.  Compl. ¶ 45.  By Decision and Order/Judgment dated April 20, 2023, the Article 78 court "granted Plaintiff the relief requested, dismissed the disciplinary charges against [Plaintiff] and ordered OCA to take any and all appropriate actions to immediately reinstate [Plaintiff] to his position . . . with full gun status together with the salary or compensation that he would have been entitled to receive . . . but for his termination and any other relief afforded to him under the CBA."  *Id.* ¶ 46, Ex. K.  No appeal was filed from the decision and order, however "a second [A]rticle 78 proceeding had to be commenced" in September 2023, due to OCA's failure to immediately restore Plaintiff to his position with full gun status.  *Id.* ¶¶ 48-49, Ex. M.  The second Article 78 proceeding was discontinued in October 2023, "after the [OCA] finally carried out the directives set forth in [the April 2023 decision and order.]"  *Id.* ¶ 50.

---

[5] Defendant St. George replaced Defendant Caruso as DCAJ in or around May or June of 2021. Compl. ¶¶ 6-7.

## II.     LEGAL STANDARD

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction." *Mann v. N.Y. State Ct. of Appeals*, No. 21-cv-49 (MAD/CFH), 2021 WL 5040236, at *3 (N.D.N.Y. Oct. 29, 2021) (citation omitted). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d 292, 297–98 (N.D.N.Y. 2019) (cleaned up). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true[ ] and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted). A court may also "refer to evidence outside the pleadings" and "take judicial notice of documents in the public record[.]" *Krajisnik Soccer Club, Inc. v. Krajisnik Football Club, Inc.*, No. 20-cv-1140 (LEK/TWD), 2021 WL 2142924, at *2 (N.D.N.Y. May 26, 2021) (citations omitted).

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.' " *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level[.]" *Id.* (quoting *Twombly*, 550 U.S. at 555). A court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

III.    DISCUSSION

A.    Eleventh Amendment Immunity

Defendants Caruso and St. George argue that Plaintiff's § 1983 claims against them are barred by Eleventh Amendment immunity, because Plaintiff alleges that the Defendants' "actions taken in their capacity as 'high-ranking officials' of the [OCA] violated Plaintiff's Constitutional rights." Defendants' Memorandum of Law (Def. MOL) at 5-6, Dkt. No. 23-1. In response, Plaintiff contends that the Eleventh Amendment does not bar his claims against the Defendants, who are being sued in their "individual" and "administrative" capacities. Plaintiff's Memorandum of Law (Pl. MOL) at 2-3, Dkt. No. 24.

The courts in this Circuit have drawn a clear distinction between official-capacity and individual-capacity claims. "'[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Tanvir v. Tanzin*, 894 F.3d 449, 458–59 (2d Cir. 2018), *aff'd*, 592 U.S. 43 (2020) (quoting *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). "In an official capacity suit, 'the real party in interest . . . is the governmental entity and not the named official.'" *Id.* (quoting *Hafer*, 502 U.S. at 25)); *see also Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." (citation omitted)). "By contrast, individual capacity suits 'seek to impose individual liability upon a government officer for [his or her] actions under color of [ ] law.[6]'" *Id.* (quoting *Hafer*, 502 U.S. at 25). Damages awarded in an individual capacity suit "will

[6] "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)); *see also See Monroe v. Pape*, 365 U.S. 167, 172 (1961) (holding that individual liability under section 1983 attaches to those wrongdoers "who carry a badge of authority of a State and represent it in some capacity, whether

not be payable from the public fisc but rather will come from the pocket of the individual defendant." *Id.* (quoting *Blackburn v. Goodwin*, 608 F.2d 919, 923 (2d Cir. 1979)).

"The Eleventh Amendment precludes suits against a state [and its agencies] unless the state expressly waives its immunity or Congress abrogates that immunity." [7] *Thomas v. Martin-Gibbons*, 857 F. App'x 36, 37 (2d Cir. 2021) (citing *CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 95 (2d Cir. 2002)).  This includes suits against state officials, such as judges, in their official capacities. *Id.*  (citing *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002)); *see also Dickson v. Schenectady Fam. Ct.*, No. 1:22-cv-499 (DNH/CFH), 2022 WL 16966549, at *3 (N.D.N.Y. Oct. 27, 2022), *report and recommendation adopted*, 2022 WL 16961389 (N.D.N.Y. Nov. 16, 2022) ("[J]udges within the New York State Unified Court System are entitled to Eleventh Amendment immunity to the extent they are sued in their official capacity.").

Accordingly, Eleventh Amendment immunity would bar Plaintiff's claims against Defendants St. George and Caruso, if they were asserted as official-capacity claims.  As Plaintiff points out, however, his claims are clearly asserted against the Defendants in their personal, or individual, capacities. *See* Compl. ¶¶ 6, 7.  Plaintiff's characterization of the Defendants as "high-ranking officials" of the OCA does not otherwise convert his claims.  There is a critical difference between asserting a claim against an individual defendant in his official capacity, and asserting a claim against an individual defendant, who holds a government title, in his personal, or individual, capacity.  The fact that a defendant was operating in his official government role when he

---

they act in accordance with their authority or misuse it"), *overruled in part on other grounds by Monell v. Department of Soc. Svcs*, 436 U.S. 685 (1978).

[7] "New York has not waived its immunity for damages claims brought under 42 U.S.C. § 1983, nor has Congress abrogated it in enacting § 1983." *Thomas v. Martin-Gibbons,* 857 F. App'x at 37 (cleaned up).

committed the allegedly violative conduct does not preclude a plaintiff from seeking damages against him in an individual capacity. If this were the case, § 1983 claims, which generally require a culpable state actor, could never be asserted against a state-official defendant in his individual capacity.

Here, because Plaintiff's claims against Defendants Caruso and St. George are asserted as individual capacity claims, Eleventh Amendment immunity does not apply.[8] Thus, dismissal is not warranted under 12(b)(1) for lack of subject matter jurisdiction, and Defendants' motion to dismiss on this basis is denied.

## B.    First Amendment Retaliation

Plaintiff alleges that Defendants retaliated against him for engaging in protected First Amendment speech. Compl. ¶¶ 61-65. Defendants move to dismiss Plaintiff's First Amendment retaliation claim, arguing that Plaintiff's speech was not constitutionally protected. Def. MOL at 6-10. Defendants also argue that they are entitled to qualified immunity on Plaintiff's First Amendment retaliation claim. *Id.* at 13-16. Plaintiff responds that his First Amendment retaliation claim is valid and adequately pled. Pl. MOL at 4-9.

"To survive a motion to dismiss, a plaintiff claiming that he was retaliated against in violation of the First Amendment must plausibly allege that (1) he engaged in speech or activity

---

[8] The doctrine of judicial immunity generally shields judges from suit to the extent they are sued in their individual capacities. *Trello v. McKeighan*, 624 F. Supp. 3d 150, 155 (N.D.N.Y. 2022) (citation omitted). Pursuant to the doctrine, judges are absolutely immune from suits seeking money damages for acts taken within the scope of their judicial responsibilities. *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) (collecting cases). However, tasks that are "'not essentially judicial, such as supervising and managing court employees,' do not warrant absolute immunity, even when performed by judges." *Foy v. New York State Unified Ct. Sys.*, 740 F. Supp. 3d 136, 150 (E.D.N.Y. 2024) (quoting *Libertarian Party of Erie Cty. v. Cuomo*, 970 F.3d 106, 123 (2d Cir. 2020), *abrogated on other grounds by N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022). Defendants in this case have not moved for dismissal based on judicial immunity, presumably recognizing that the conduct giving rise to the underlying claims falls outside the scope of this doctrine.

that was protected by the First Amendment; (2) he suffered an adverse employment action; and (3) a causal connection existed between the adverse action and the protected activity." *Specht v. City of New York*, 15 F.4th 594, 599–600 (2d Cir. 2021) (citing *Smith v. County of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015)). For purposes of addressing Defendants' pending motion to dismiss, the Court limits its analysis to the first element of Plaintiff's retaliation claim.

### 1. Protected Speech

"The speech of a public employee is protected by the First Amendment when the employee speaks as a citizen on a matter of public concern, rather than pursuant to his employment responsibilities." *Specht*, 15 F.4th at 600 (citing *Garcetti v. Ceballos*, 547 U.S. 410, 420–21 (2006)). "Thus, as a public employee, Plaintiff must allege that he 'engaged in citizen speech,' in other words, that he 'spoke as a private citizen,' and that 'the speech at issue was on a matter of public concern.'" *Salvana v. New York State Dep't of Corr. & Cmty. Supervision*, 621 F. Supp. 3d 287, 301 (N.D.N.Y. 2022) (citing *Montero v. City of Yonkers, New York*, 890 F.3d 386, 399 (2d Cir. 2018) and *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015)).

### a. Citizen Speech

Defendants argue that Plaintiff's conduct did not constitute "citizen speech" because his statements "were made internally to his Supervisor within his chain of command and to fellow Court Officers[,]" thus they were made "as an employee performing his job duties, and not as a citizen." Def. MOL at 9. Plaintiff responds that he was "clearly" not carrying out the duties of his employment, as the conduct at issue "was in direct derogation of [his employment] duties." Pl. MOL at 5.

In assessing whether a public employee spoke as a citizen or an employee, "[t]he critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014). This is an "objective, practical inquiry" into

"'the nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two,' along with other contextual factors such as whether the plaintiff's speech 'was also conveyed to the public.'" *Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 83 (2d Cir. 2022) (quoting *Ross v. Breslin*, 693 F.3d 300, 306 (2d Cir. 2012)). It is not enough that the speech at issue "relates to public employment or concerns information learned in the course of public employment." *Lane*, 573 U.S. at 239. At the same time, the Second Circuit has long made clear that speech "can be pursuant to" a public employee's "official job duties even though it is not required by, or included in, [his] job description, or in response to a request by the employer." *Weintraub v. Bd. of Educ. of City Sch. Dist. of City of New York*, 593 F.3d 196, 203 (2d Cir. 2010) (internal quotation marks omitted). The relevant inquiry is whether the content of the speech was "part-and-parcel of [Plaintiff's] ability to properly execute his duties." *Shara*, 46 F.4th at 83.

Courts in this Circuit have also assessed "'whether a civilian analogue' to the employee's speech exists." *Shara*, 46 F.4th at 83 (quoting *Montero*, 890 F.3d at 397). "While this . . . inquiry 'may be of some help in determining' whether an employee speaks as a citizen," the determination of whether the speech falls within the scope of the employee's job duties remains "the heart of [the] analysis." *Id.* (quoting *Montero*, 890 F.3d at 397–98).

Here, the Court concludes that the allegations in the complaint plausibly support an inference that Plaintiff's conduct was not "part-and-parcel" of his ability to properly execute his employment duties. Plaintiff alleges that after his supervisor declined to act on the observed courtroom conduct, Plaintiff—apparently in violation of the rules governing his employment—took the video of the security footage and disseminated it to his co-workers "so they would be aware of what had occurred in the public venue for which they were responsible." Compl. at ¶ 14. Plaintiff admits that he never made any further publication of the video. *Id.* at ¶ 15. On the

one hand, these allegations could be narrowly interpreted to confine Plaintiff's conduct within the scope of his presumed official job duties, i.e. maintaining courthouse security and order. On the other hand, factual discovery surrounding the video recording and actual communications to Plaintiff's coworkers, as well as the specific nature of Plaintiff's duties and reporting responsibilities, may indicate that Plaintiff's conduct fell outside the scope of his employment duties.

The Second Circuit has cautioned against granting a motion to dismiss when the scope of a plaintiff's official duties is at issue. *See Matthews v. City of New York*, 488 F. App'x 532, 533 (2d Cir. 2012). "Other courts in this Circuit have heeded this warning and declined to dismiss cases of this kind before discovery." *Brant v. New York City Health & Hosps. Corp.,* 17 Civ. 3801, 2018 U.S. Dist. LEXIS 5428 (S.D.N.Y. Jan. 10, 2018) (citing *Jeune v. Crew*, No. 16-cv-1107, 2017 WL 4357382, at *16 (E.D.N.Y. Sept. 29, 2017)); *see also Espinoza v. City of New York*, No. 12-cv-341, 2012 WL 6851171, at *8 (E.D.N.Y. Dec. 10, 2012), *report and recommendation adopted*, 2013 WL 146036 (E.D.N.Y. Jan. 14, 2013) (holding "that there is a need to more fully develop the factual basis for plaintiff's claims—specifically the nature of her duties and reporting responsibilities—and that analysis of whether her speech is protected by the First Amendment is premature at this time"); *Taylor v. N.Y. City Dep't of Educ.*, 2012 U.S. Dist. LEXIS 127810, 2012 WL 3890599, at *4-8 (S.D.N.Y. Sept. 6, 2012) ("Absent a more detailed record of the content and circumstances of [the plaintiff's] speech, the Court cannot say, as a matter of law, that her speech was as an employee rather than a citizen and that Defendants are entitled to prevail as a matter of law on her First Amendment claim.")).

Here, the Court cannot conclude that Plaintiff's speech was as an employee rather than a citizen at this early juncture, and without the benefit of discovery. Accordingly, and accepting as

true the well-pleaded facts in the Complaint, the Court declines to grant Defendants' motion to dismiss on this basis.

### b.    Matter of Public Concern

Defendants also argue that Plaintiff's speech did not "bear on a matter of public concern" because his actions—the copying of video from court security monitors with his private cell phone and then distributing that video to fellow court officers by electronic means— was done to protect Plaintiff's personal employment interests.  Def. MOL at 10.  Plaintiff responds that his conduct related to a matter of public concern and was therefore protected speech because he was "videotaping what he perceived to be a loathsome emulation of the nazi goosestep salute . . . in a public courtroom[.]"  Pl. MOL at 9.

"Whether speech is on a matter of public concern is a question of law" that courts decide by "examining the content, form, and context of a given statement, as revealed by the whole record."  *Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 84 (2d Cir. 2022) (citing *Montero*, 890 F.3d at 399). "Speech deals with matters of public concern when it can be fairly considered as relating to matters of political, social, or general interest to the community or value and concern to the public." *Specht*, 15 F.4th at 600 (citing *Snyder v. Phelps*, 562 U.S. 443, 453 (2011)).  As the Second Circuit has explained:

> To identify matters of public concern, "we consider the motive of the speaker, cognizant that speech on a purely private matter does not pertain to a matter of public concern and, conversely, that an individual motivated by a personal grievance can simultaneously speak on a matter affecting the public at large[.]"

*Id.* (quoting *Golodner v. Berliner*, 770 F.3d 196, 203 (2d Cir. 2014)); *see also Snyder v. Phelps,* 562 U.S. 443, 454 (2011) ("In considering content, form, and context, no factor is dispositive, and it is necessary to evaluate all the circumstances of the speech, including what was said, where it was said, and how it was said.").

As pled, Plaintiff's conduct is sufficiently related to matters of public concern for purposes of surviving Defendants' motion to dismiss. Certainly, speech surrounding the appropriateness of "nazi-emulating" conduct observed in a public courthouse by public employees could fall within the confines of this category. Moreover, courts have held that "[a]n employee seeking to bring to light actual or potential wrongdoing or a breach of public trust by public employees or agencies is addressing a matter of public concern." *Rotundo v. Vill. of Yorkville*, No. 6:09-cv-1262(DNH), 2011 WL 838892, at *5 (N.D.N.Y. Mar. 4, 2011) (citing *Connick v. Myers*, 461 U.S. 138, 148 (1983)); *see also Glass v. Dachel*, 2 F.3d 733, 741 (7th Cir. 1993) ("[M]atters of public concern do include speech aimed at uncovering wrongdoing or breaches of public trust."); *Garcetti*, 547 U.S. at 425 ("[G]overnmental . . . misconduct is a matter of considerable significance."). Accordingly, Defendants' motion to dismiss on this basis is denied.

### 2.    Qualified Immunity

Defendants argue that dismissal of Plaintiff's First Amendment retaliation claim is alternatively warranted on qualified immunity grounds. Qualified immunity bars claims for damages against government officials sued individually for conduct undertaken in their official capacities. *Ziglar v. Abbasi*, 582 U.S. 120, 150-51 (2017). "Qualified immunity is designed to balance the 'competing interests' of allowing an 'avenue for vindication of constitutional guarantees,' and providing 'breathing room' for government officials 'to make reasonable but mistaken judgments about open legal questions.'" *Greco v. City of New York*, 686 F. Supp. 3d 191, 201 (E.D.N.Y. 2023) (quoting *Ziglar*, 582 U.S. at 150-51). To survive a qualified immunity defense, a plaintiff must plead "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Sabir v. Williams*, 52 F.4th 51, 58 (2d Cir. 2022) (cleaned up).

For a qualified immunity defense asserted in a motion to dismiss to be successful, the "facts supporting the defense [must] appear on the face of the complaint," and the plaintiff "is entitled to all reasonable inferences from the facts alleged . . . that defeat the immunity defense." *McKenna v. Wright*, 386 F.3d 432, 434, 436 (2d Cir. 2004) (describing a defendant's burden of establishing a qualified immunity defense in a Rule 12(b)(6) motion as a "formidable hurdle"); *see also Ziemba v. Lynch*, No. 11-cv-974, 2013 WL 5232543, at *9 (D. Conn. Sept. 17, 2013) (denying motion to dismiss on qualified immunity grounds where the defendant "only include[d] the legal standard for establishing qualified immunity and, in a conclusory manner, state[d] that the claims . . . are subject to dismissal based on [that] law").

Here, Defendants are not entitled to qualified immunity at this early stage in the proceeding.  Indeed, Defendants' argument as to what the record "will show," Def. MOL at 13-16, inherently acknowledges the fact-intensive nature of a qualified immunity defense, and that facts supporting this defense do not appear on the face of the Complaint.  Accordingly, Defendants' motion to dismiss on this basis is denied as premature.

### C.    Fourteenth Amendment Due Process

Plaintiff alleges that the Defendants violated his Fourteenth Amendment right to due process when they disciplined Plaintiff, and ultimately terminated his employment.  Compl. ¶¶ 66-75.  To establish a Section 1983 claim premised on a Fourteenth Amendment procedural due process violation, a plaintiff must show two elements: (1) the existence of a protected interest; and (2) deprivation of that interest without due process.  *Bryant v. New York State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012) (citing *Narumanchi v. Bd. of Trustees*, 850 F.2d 70, 72 (2d Cir. 1988)).

Defendants argue that Plaintiff was afforded sufficient process with respect to the termination of his employment, inasmuch as he was "provided notice of the [disciplinary] charges

against him, an opportunity to answer those charges, a hearing in which to contest those charges by presenting evidence and an opportunity to make post hearing submissions."  Def. MOL at 12. Plaintiff responds that the "wrongfulness of his termination," as suggested by the Article 78 court, permits him to proceed on the due process claim.  Pl. MOL at 9-11.

For purposes of the motion to dismiss, the parties do not dispute that Plaintiff enjoyed a protected property interest in his civil service employment.  Public employees who can be fired only for cause have a property interest in their continued employment, and they are entitled to due process when they are deprived of that interest.  *Morgan v. Cnty. of Warren*, No. 22-345, 2022 WL 13691731, at *2 (2d Cir. Oct. 24, 2022) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39 (1985)).

The follow-up inquiry is whether Plaintiff was deprived of this established property interest without due process.  "Generally, due process requires that a state afford persons 'some kind of hearing' prior to depriving them of a liberty or property interest." *DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir. 2003).  Under certain circumstances, however, the "lack of such pre-deprivation process will not offend the constitutional guarantee of due process, provided there is sufficient post-deprivation process." *Spinelli v. City of New York*, 579 F.3d 160, 170 (2d Cir. 2009) (alterations and internal quotation marks, and citation omitted).  For example, "[w]here a deprivation at the hands of a government actor is 'random and unauthorized,' hence rendering it impossible for the government to provide a pre-deprivation hearing, due process requires only a post-deprivation proceeding." *DiBlasio*, 344 F.3d at 302.  Thus, "[w]hen reviewing alleged procedural due process violations, the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees." *Hellenic Am. Neighborhood Action Comm. v. City of New York (HANAC)*, 101 F.3d

877, 880 (2d Cir. 1996) (citations omitted).  "When the state conduct in question is random and unauthorized, the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy." *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) (citing *HANAC*, 101 F.3d at 880).  "In contrast, when the deprivation is pursuant to an established state procedure, the state can predict when it will occur and is in the position to provide a pre-deprivation hearing." *Id.*; *see also HANAC*, 101 F.3d at 880 ("When the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, *ipso facto*, satisfy due process.").

Although the distinction is not always clear-cut, the Second Circuit has held that "acts of high-ranking officials who are ultimate decision-maker[s] and have final authority over significant matters, even if those acts are contrary to law, should not be considered random and unauthorized conduct for purposes of a procedural due process analysis." *Rivera-Powell*, 470 F.3d at 465 (quotations omitted and alteration in original).  At least one court in this Circuit has explicitly recognized that the decision to terminate a public employee falls within the "established state procedures" category and, thus, generally requires more than the availability of a post-deprivation remedy. *See, e.g., Mullen v. Vill. of Painted Post,* 356 F. Supp. 3d 275, 282 (W.D.N.Y. 2019) (finding that "actions . . . taken by Mayor Foster and the Village Board, the entities vested with final decision-making authority regarding [plaintiff's] employment," were "undertaken pursuant to established state procedures."). The majority of courts, however, have declined to draw the distinction, focusing instead on "what process was due," regardless of the classification of the state action.  *See, e.g., Taylor v. Greene Cent. Sch. Dist.*, No. 3:23-cv-706 (MAD/ML), 2023 WL 8654261, at *5 (N.D.N.Y. Dec. 13, 2023) (concluding that the defendants provided plaintiff the

process due regardless of whether the state action was random and unauthorized or an established state procedure); *Morgan v. Cnty. of Warren*, No. 1:21-cv-0278 (LEK/DJS), 2022 WL 195065, at *4 (N.D.N.Y. Jan. 21, 2022) (same), *aff'd,* No. 22-345, 2022 WL 13691731 (2d Cir. Oct. 24, 2022); *see also Rivera-Powell*, 470 F.3d at 467 (declining to "foray further into th[e] legal thicket" of the same question "absent some real need to address" it, and finding that the state had provided due process regardless of how the challenged actions were classified) (citation omitted).

To this end, it is well settled law in this Circuit that when a public employee is terminated, "procedural due process is satisfied if the government provides notice and a limited opportunity to be heard prior to termination, so long as a full adversarial hearing is provided afterwards." *Morgan v. Cnty. of Warren,* No. 22-345, 2022 WL 13691731, at *2 (2d Cir. Oct. 24, 2022) (quoting *Locurto v. Safir*, 264 F.3d 154, 171 (2d Cir. 2001)). The requirements for any such pre-termination hearing are "minimal." *Id.*; *see also Locurto*, 264 F.3d at 174 (pre-termination hearing requires only "notice of the charges, an explanation of the nature of the employer's evidence, and an opportunity for the employee to respond," and does not need to be conducted by a neutral adjudicator). "With respect to the requisite post-termination hearing . . . the availability in New York of an Article 78 proceeding satisfies the requirements of due process." *Id.* (citing *Rivera-Powell v. New York City Bd. Of Elections*, 470 F.3d 458, 466–67 (2d Cir. 2006) (collecting cases)); *Locurto*, 264 F.3d at 175 (holding, in the context of a § 1983 suit challenging the dismissal of a tenured public employee, that "[a]n Article 78 proceeding . . . constitutes a wholly adequate post-deprivation hearing for due process purposes"); *see also HANAC,* 101 F.3d at 881.

Here, Plaintiff has not specifically alleged whether the Defendants' conduct was random and unauthorized or an established state procedure, nor does he argue one way or the other in his motion papers.  The Court need not determine this issue, however, because Plaintiff has not

pleaded any facts that would suggest that the pre- or post-deprivation processes afforded to him were constitutionally deficient, even if Plaintiff's termination was undertaken pursuant to established state procedures.  As to the pre-deprivation process, Plaintiff does not dispute that he was provided notice of the disciplinary charges with an opportunity to respond, along with a hearing on the charges, prior to his termination.  Nor has Plaintiff raised a plausible due process claim with respect to the post-deprivation process afforded to him.   Plaintiff's argument concerning the Article 78 court's assignment of error to the Defendants' conduct does not suggest that the hearing itself did not satisfy the requirements of due process.  On the contrary, the Article 78 proceeding proved its sufficiency to the extent Plaintiff successfully challenged his termination and was reinstated to his position.  "It is not the role of this Court to determine whether the decision to terminate the Plaintiff . . . was correct or supported by sufficient evidence.  As long as the . . . Defendants complied with the minimal due process requirements for a pre-termination hearing, the Article 78 proceeding is a 'wholly adequate post-deprivation remedy.'" *Reed v. Medford Fire Department, Inc.*, 806 F. Supp. 2d 594, 617 (E.D.N.Y. 2011); *see also Green v. Department of Education of City of New York,* 16 F.4th 1070, 1077 (2d Cir. 2021) ("[e]ven if Green's pre-termination hearing was imperfect, the availability of a state-court proceeding to challenge the arbitration decision provided 'a wholly adequate post-deprivation hearing for due process purposes'").

The Second Circuit addressed a similar allegation of due process violation in *Morgan v. Cnty. of Warren*.  Morgan appealed from, among other things, the district court's dismissal of her procedural due process claim premised on her termination from employment as a paralegal in a permanent civil service position.  *Morgan,* 2022 WL 13691731, at *1.  Specifically, Morgan alleged that workplace disciplinary charges were initiated against her based on "false allegations."

*Id.* A disciplinary hearing was held, after which the defendants adopted the hearing officer's recommendation finding Morgan guilty of most of the disciplinary charges. *Id.* Morgan was terminated for cause the same day. *Id.* Morgan commenced an Article 78 proceeding challenging the termination, which was decided in Morgan's favor. *Id.* The Second Circuit upheld the district court's dismissal of her due process claim, relying on the sufficiency of the Article 78 proceeding to meet the due process requirement owed. Here as in *Morgan*, Plaintiff has failed to plausibly allege how the processes provided fell short of constitutional guarantees.

Because Plaintiff has presented no facts that would call into question the adequacy of the pre- and post-deprivation processes afforded him with respect to his employment termination,[9] his due process claim must be dismissed.[10]

## IV.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants' motion to dismiss under Rules 12(b)(1) and 12(b)(6), Dkt. No. 23, is **GRANTED** in part and **DENIED** in part; and it is further

---

[9] To the extent Plaintiff is alleging a "stigma-plus" due process violation, this does not otherwise impact the court's analysis. It is well settled that "the availability of adequate process defeats a stigma-plus claim." *Xu v. City of New York,* No. 21-1059-CV, 2023 WL 4285031, at *2 (2d Cir. June 30, 2023) (quoting *Segal v. City of New York*, 459 F.3d 207, 213 (2d Cir. 2006)).

[10] The Court does not construe the Complaint to allege a Fourteenth Amendment due process claim specifically concerning the seizure of Plaintiff's personal firearms. Plaintiff's Third Cause of Action alleges that the Defendants violated Plaintiff's due process rights "[b]y participating in the disciplinary proceedings . . . ." Compl. ¶ 74. At the motion hearing, Plaintiff's counsel represented that allegations concerning the seizure of Plaintiff's firearms are integral to Plaintiff's due process claim concerning the termination of his employment. Plaintiff has also alleged a Second Amendment claim concerning the seizure of his firearms, which is not the subject of Defendants' pending motion to dismiss.

**ORDERED** that Defendants' motion to dismiss is **GRANTED** as to Plaintiff's Fourteenth Amendment due process claim as set forth in the Third Cause of Action in the Complaint, and this claim is **DISMISSED** without prejudice, and it is further

**ORDERED** that Defendants' motion to dismiss is in all other respects **DENIED.**

**IT IS SO ORDERED.**

Dated: April 2, 2025

Elizabeth C. Coombe
U.S. District Judge